IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 23-cv-00476 |

## COMPLAINT

Plaintiff Volkswagen Group of America, Inc. ("Plaintiff") brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") to enforce Audi trademarks and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to

---

[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold products using infringing and counterfeit versions of the federally registered Audi trademarks to residents of Illinois.  Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused substantial injury to the Audi brand in the State of Illinois.

## II. INTRODUCTION

3.	This action has been filed to combat e-commerce store operators who trade upon Audi's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products, including vehicle parts and accessories, using infringing and counterfeit versions of the federally registered Audi trademarks (the "Counterfeit Audi Products").  Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Audi Products to unknowing consumers.  E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences.  Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation.  This action was filed to combat Defendants' counterfeiting of the registered Audi trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Audi Products over the Internet.  The Audi brand has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of the valuable

2

Audi trademarks as a result of Defendants' actions and Plaintiff seeks injunctive and monetary relief.

## III. THE PARTIES

**The Plaintiff**

4. Audi AG is a corporation organized under the laws of Germany with its principal place of business in Ingolstadt, Germany, and is a wholly owned subsidiary of Volkswagen AG. Under agreement with Audi AG, Plaintiff polices and enforces Audi's trademarks in the United States. Plaintiff Volkswagen Group of America, Inc. and Audi AG are referred to herein together or individually as "Audi".

5. Audi AG is a world-famous automobile manufacturer that, through Plaintiff, sells Audi automobiles and genuine parts and accessories ("Audi Products") through a network of licensed independent Audi dealerships throughout the United States. Audi Products have become enormously popular, driven, in part, by Audi's quality standards and innovative design. Among the purchasing public, genuine Audi Products are instantly recognizable as such and symbolize high quality.

6. Plaintiff distributes and sells Audi Products to consumers through a network of licensed independent Audi dealerships throughout the United States, including through several Audi dealerships in Illinois. Since at least as early as 1997, Audi also operates websites, including audiusa.com and audicollectionusa.com, through which consumers can purchase genuine Audi parts, automotive accessories, and personal goods and accessories directly from Audi or licensed independent Audi dealerships.

7. Audi incorporates a variety of distinctive marks in the design of its various Audi Products. Audi uses its trademarks in connection with the marketing of its Audi Products, and is

3

the exclusive owner of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise, including the following marks which are collectively referred to as the "Audi Trademarks." The Audi Trademarks cover automobile parts and accessories, including, but not limited to, automobile emblems, floor mats, and parts and accessories for vehicle lighting.

| Registration No. | Mark |
|---|---|
| 4,995,364 | AUDI |
| 5,093,264 | AUDI |
| 1,283,271 | QUATTRO |
| 3,241,273 | QUATTRO |
| 3,702,707 | QUATTRO |
| 4,284,786 | (Audi four rings logo with "Audi" wordmark) |
| 2,083,439 | (Audi four rings logo with "Audi" wordmark) |
| 3,007,305 | (Audi four rings logo) |
| 3,201,037 | (Audi four rings logo) |

4



8. The Audi Trademarks have been used exclusively and continuously by Audi for many years, and have never been abandoned. The above U.S. registrations for the Audi Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed Audi Trademarks are attached hereto as **Exhibit 1**. The registrations for the Audi Trademarks constitute *prima facie* evidence of their validity and of Audi's exclusive right to use the Audi Trademarks pursuant to 15 U.S.C. § 1057(b).

9. Audi uses the Audi Trademarks to identify the source of its goods and services. Audi Products have long been among the most popular vehicles, vehicle parts and accessories in the world and have been extensively promoted and advertised at great expense. Audi Products are

also known for their engineering, quality, and innovative designs. Because of these and other factors, the Audi name and Audi Trademarks have become famous throughout the United States.

10. Audi Trademarks are distinctive when applied to Audi Products, signifying to the purchaser that the products come from Audi and are manufactured to Audi's quality standards. Whether Audi manufactures the products itself or licenses others to do so, Audi Products bearing Audi Trademarks are manufactured to high quality standards. Audi Trademarks have achieved tremendous fame and recognition, which has only added to the inherent distinctiveness of the marks. As such, the goodwill associated with the Audi Trademarks is of incalculable and inestimable value to Audi.

11. Audi has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Audi Trademarks. As a result, products bearing Audi Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being quality Audi Products.

**The Defendants**

12. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics

6

used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of the Audi brand has resulted in significant counterfeiting of the Audi Trademarks. In recent years, Audi has identified many fully interactive, e-commerce stores offering Counterfeit Audi Products on online marketplace platforms such as Amazon, eBay, AliExpress, Alibaba, Wish.com, Walmart, Etsy, and DHgate, including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States. According to a U.S. Customs and Border Protection (CBP) report, in 2021, CBP made over 27,000 seizures of goods with intellectual property rights (IPR) violations totaling over $3.3 billion, an increase of $2.0 billion from 2020. *Intellectual Property Rights Seizure Statistics, Fiscal Year 2021*, U.S. Customs and Border Protection. (**Exhibit 2**). Of the 27,000 in total IPR seizures, over 24,000 came through international mail and express courier services (as opposed to containers), 51 percent of which originated from China and Hong Kong. *Id*.

15. Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office

of Strategy, Policy, and Plans (Jan. 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 186-187.

16. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and/or funds from U.S. bank accounts, and, on information and belief, have sold Counterfeit Audi Products to residents of Illinois.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars and/or funds from U.S. bank accounts via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Audi has not licensed or authorized Defendants

to use any of the Audi Trademarks, and none of the Defendants are authorized retailers of genuine Audi Products.

18. Many Defendants also deceive unknowing consumers by using the Audi Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Audi Products. Other e-commerce stores operating under the Seller Aliases omit using Audi Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Audi Products.

19. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

20. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Audi Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration

patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Audi Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Audi Products were manufactured by and come from a common source and that Defendants are interrelated.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple Seller Aliases and payment accounts so that they can continue operation in spite of Audi's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Audi. Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

24. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Audi Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Audi, have jointly and severally, knowingly and willfully used and continue to use

the Audi Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Audi Products into the United States and Illinois over the Internet.

25. Defendants' unauthorized use of the Audi Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Audi Products, including the sale of Counterfeit Audi Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

26. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Audi Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Audi Trademarks are distinctive marks. Consumers have come to expect the highest quality from Audi Products offered, sold or marketed under the Audi Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the Audi Trademarks without permission.

29. Audi is the exclusive owner of the Audi Trademarks. Audi's United States Registrations for the Audi Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Audi's rights in the Audi Trademarks, and are willfully infringing and intentionally using counterfeits of the Audi Trademarks. Defendants' willful, intentional and unauthorized use of the Audi Trademarks is likely to cause and is causing

confusion, mistake, and deception as to the origin and quality of the Counterfeit Audi Products among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Audi has no adequate remedy at law, and if Defendants' actions are not enjoined, Audi will continue to suffer irreparable harm to its reputation and the goodwill of the Audi Trademarks.

32. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Audi Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Audi Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Audi or the origin, sponsorship, or approval of Defendants' Counterfeit Audi Products by Audi.

35. By using the Audi Trademarks in connection with the sale of Counterfeit Audi Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Audi Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Audi Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. There is no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the associated goodwill of the Audi brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the Audi Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Audi Product or is not authorized by Audi to be sold in connection with the Audi Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Audi Product or any other product produced by Audi, that is not Audi's or not produced under the authorization, control, or supervision of Audi and approved by Audi for sale under the Audi Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Audi Products are those sold under the authorization, control or supervision of Audi, or are sponsored by, approved by, or otherwise connected with Audi;

    d. further infringing the Audi Trademarks and damaging Audi's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Audi, nor authorized by Audi to be sold or offered

for sale, and which bear any of Audi's trademarks, including the Audi Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, upon Plaintiff's request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com, Walmart, Etsy, and DHgate (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the Audi Trademarks;

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Audi Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Audi Trademarks;

5) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 25th day of January 2023.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Kahlia R. Halpern
Thomas J. Juettner
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
khalpern@gbc.law
tjjuettner@gbc.law

*Counsel for Plaintiff*
*Volkswagen Group of America, Inc.*